[Civ. No. 6138. First Appellate District, Division Two.—March 21, 1928.]

FRANK BOYD, Respondent, v. R. E. IBBETSON, Appellant.

Maurice C. Sparling for Appellant.

Carlyle Wynn for Respondent.

WELCH, J., *pro tem.*—Appellant, in November, 1922, was the owner of a tract of land in Los Angeles County which he proposed to subdivide into residence lots. Respondent, a contractor, entered into a memorandum of agreement with appellant whereby he agreed to grade the streets of said subdivision and to construct sidewalks and curbs therein. Respondent entered upon the work of grading the streets of the subdivision and continued to do so until February 17, 1923, when a dispute arose between the parties. On March 7th the parties entered into another agreement which was supplemental to and in amplification of the memorandum agreement above mentioned. This dispute being unsettled in May respondent ceased work under the contracts and commenced three separate actions against appellant, one for grading and leveling work, one for specific enforcement of the contracts and one for sand and gravel alleged to have been furnished appellant by respondent, independent of the contracts.

It being stipulated that the three actions may be tried together and that the testimony introduced in any one cause may be applied to all three causes, the trial court made but one decision and one judgment in all three cases. In so doing it considered that the three complaints were contained in one pleading and that the three answers thereto were contained in one pleading; that the cross-complaint of appellant and the answer thereto be considered as a separate action.

The trial court gave respondent judgment for $4,422.20, from which this appeal is taken upon the judgment-roll and a bill of exceptions. Included in the appeal is an order denying appellant a new trial.

The theory of respondent is that appellant was in default in his payments and in keeping his agreements and for these reasons respondent may recover a reasonable value for his work and services already performed without first completing his entire contract. It appears from appellant's pleadings and his claims here that his theory of the case is that the contract between the parties is entire; that respondent did not complete the entire contract, but ceased to perform the same long before its completion, that he thereby breached his contract and is entitled to nothing, but, on the contrary, is liable to appellant for the money necessarily expended beyond the contract price in completing the work.

In response to an attack made by appellant upon the sufficiency of the pleadings of respondent and upon the trial court's decision, respondent's counsel admits that the complaints are not "paragons of pleadings" and that their shortcomings might imperil the judgment, were it not for the protecting provisions of section $4\frac{1}{2}$ of article VI of the state constitution. Considering all the pleadings in the three actions together, as did the parties and the trial court, in which pleadings all the facts of the contracts and of the transaction are set forth and also considering the bill of exceptions wherein a full transcription of the evidence is brought here, this court does not find it necessary to resort either to said constitutional provision, which covers a multitude of errors, or to the broad provisions of section 956a of the Code of Civil Procedure [Stats. 1927, p. 583], in regard to insufficient findings.

The first question of inquiry is: Was there a breach of contract by the appellant? The answer to this question will practically decide this case on appeal.

In the preliminary agreement appellant authorized respondent to commence at once the grading of the streets of appellant's subdivision and agreed to pay him "35c a yard for the dirt removed." The contract further provided for laying sidewalks and installing curbs by appellant on the subdivision at agreed prices; sixty per cent of the value of all work was to be paid for in cash and forty per cent in lots of the tract at sale prices; of the sixty per cent, seventy-five per cent thereof was to be paid as the work progressed

and the balance of twenty-five per cent upon the completion of the work.

Respondent immediately entered upon the execution of his contract and continued his work of grading the streets until February 17, 1923, when, as stated above, a dispute arose between the parties as to payments, yardage of dirt moved and other differences. At that time all of the rough grading down to the laying of the sidewalks and installing curbs had practically been done. The engineer, who was the agent of the appellant owner, had given to respondent an estimate of 29,000 cubic yards of earth moved in so grading the streets, while respondent claimed that by reason of his being compelled by no fault of his to move certain earth two or three times the yardage moved and re-moved by him was 41,000 cubic yards. On this point of yardage the trial court held that by reason of errors of the engineer of appellant in placing grade stakes, respondent had been compelled to move large quantities of earth more than once, but that the amount of which could not be ascertained, and thereupon fixed the amount of dirt moved in grading under the contract at 22,492 cubic yards. For this yardage the court allowed the appellant 35 cents per cubic yard, amounting to $8,222.20. Upon this amount $4,920 had been paid, leaving a balance of $3,302.20. This balance on February 17, 1923, had been earned and respondent, if not in default, was then entitled to an adjustment and settlement under the terms of the contract. The supplemental agreement recited that respondent in grading the streets had followed the specifications and directions of the owner's engineers.

Exclusive of an item of $1,120, which we will hereafter notice, the appellant had overpaid respondent on February 17th the seventy-five per cent of the sixty per cent cash payment to be made as the work progressed; but in our judgment respondent at that time was entitled to payment and liquidation of his forty per cent, which had been earned and which was to be liquidated in lots. The supplemental complaint provides that ''as to the manner and time of payment for such services and work performed'' said owner shall pay in money seventy-five per cent of the sixty per cent of the price of dirt moved on the 1st and 15th of each month and the balance of forty per cent shall be liquidated

by respondent receiving different lots to be picked out by him from lots over the entire tract not already sold. Under the terms of the contracts and the evidence in the case respondent did not have to wait until he had completed all his contract work before receiving his lots in liquidation for the forty per cent earned as the work progressed. Respondent with the knowledge and consent of appellant had on February 17th exercised his right to select his lots in liquidation of his forty per cent of the contract price. The evidence shows and the court found that appellant agreed to deed these lots to respondent, but failed to do so. In excuse for his failure to keep his promise appellant now claims that the deeds of conveyance were to be executed to respondent upon the payment by respondent of twenty-five per cent assumed for the proportional amount of an existing mortgage on the subdivision. The weakness of this argument is that he made no such condition to his promise to deed the lots selected as payment for the forty per cent earned under the contract. Besides, he might have waived the twenty-five per cent mortgage payment, or he may have kept his promise to convey and demanded before delivery of the deed the payment of the proportional amount of the mortgage instead of requiring respondent to assume the amount. The preliminary memorandum contract provided that the contractor should assume twenty-five per cent of the price value of the lots, being the estimated proportional part of the mortgage on the whole tract. It was under this contract that the grading here charged for and allowed was done. The supplemental agreement provides that the contractor shall assume the twenty-five per cent mortgage debt; that upon the selection of the lots in liquidation of the forty per cent earned the owner would execute to respondent contracts of sales, "showing proper allowances for his credit equalling said forty per cent and deeds and certificates of title thereafter be executed" to respondent upon the payment of twenty-five per cent assumed. Upon respondent earning the forty per cent and selecting lots at sale prices in payment and liquidation thereof, it was incumbent upon appellant, and without demand of respondent, to execute to respondent, or to offer to execute to him, contracts of sale, as provided

for in the contract. This he did not do and failed, as found by the court, to reserve for respondent his selected lots.

We conclude on this branch of the case that appellant breached his contract in failing and refusing to carry out his agreement to pay for and liquidate the forty per cent of the contract price earned in lots. It is of no moment whether he failed and refused to keep his contract as to his cash payments or defaulted in keeping his agreements to liquidate the balance in lots. It clearly appearing from the pleadings, evidence, and findings that appellant was in default in his payments for the work of grading which by admission of appellant was done according to specifications and under the direction of his own agent, respondent had the right to consider his contract at an end and to sue for the reasonable value of the work done. (*Porter* v. *Arrowhead Res. Co.*, 100 Cal. 500 [35 Pac. 146] ; *Beck* v. *Schmidt*, 13 Cal. App. 448 [110 Pac. 455].)

Appellant contends that even if he has breached his contract in making his payments respondent cannot recover, under the pleadings and evidence in the case, a reasonable value for work done. Respondent alleged in his complaints that $14,350 was the reasonable value for the grading and work performed before the breach of the contract on the part of appellant; that $5,740 of such amount, or forty per cent thereof, was to be paid for in lots and that $5,740 was the reasonable value of said lots to be taken in payment for such grading; that respondent demanded of appellant conveyance of said lots so earned and that appellant has failed and neglected to convey such lots or any lots to respondent. In his answers appellant denied that $14,350 is a reasonable or any value for services and work performed by plaintiff "or any sum whatever in excess of $4,095.00" exclusive of the forty per cent to be liquidated in lots; and denied that $5,740 represents forty per cent of the total to be taken in real estate "or any other sum in excess of $3,288.88 is a fair, just or reasonable value of that portion of the work performed by plaintiff under said contract to be taken in lots." Nor did appellant specifically deny respondent's allegation in his second count in his first verified complaint wherein he alleged that appellant in November, 1922, engaged and hired respondent to grade cer-

tain streets and agreed to pay respondent the reasonable value for such services. The trial court found the amounts as admitted and pleaded by appellant. If the admissions be deemed insufficient to relieve respondent from producing evidence independent of the contract to show reasonable value for such services, then we hold under the circumstances of this case that the contract price of 35 cents per cubic yard "for dirt moved" is *prima facie* evidence of the reasonable value for services and work performed in grading said streets. (*Bringham* v. *Knox,* 127 Cal. 40 [59 Pac. 198].) The contracts were pleaded and relied on by both parties. They were introduced in evidence without objection and with the consent of the appellant. The findings of the court and the admissions and estimations of appellant are based upon the price of 35 cents per cubic yard.

In addition to allowing respondent 35 cents per cubic yard for the earth moved in the grading of the streets under written contracts, the court allowed respondent an item of $1,120. In his third complaint respondent sued appellant for the reasonable value of 3,200 cubic yards of sand and gravel which he alleged he furnished to appellant and deposited upon the subdivision tract. The facts are that during the grading work respondent discovered in the line of one of the streets which he was grading an old creek bed of sand which he conceived would be of use to him in making sidewalks and curbs under the terms of his contract. He excavated 3,200 cubic yards of this sand and gravel and placed the same in convenient piles over the tract for future use. He filled the excavations from which he took the sand and gravel with other earth materials. In its decision the trial court stated that it did not find the reasonable market value of such sand and gravel for the reason that it was taken from the land of appellant; but that 35 cents per cubic yard was a fair, just, and reasonable compensation for the work, labor, and services in excavating and placing same upon such streets and that appellant had received full benefit and use of the same in constructing sidewalks and curbs, which benefit exceeded 35 cents per cubic yard. The undisputed evidence, however, shows that appellant used but twenty-five to thirty-five per cent of the sand and gravel in dispute. The remaining portion contained so much dirt that the municipal authorities would not allow it to be used

and, at the expense of appellant, it was hauled to · other places and scattered over the tract.

It will be noted that respondent did not sue for reasonable value for services, but he sued for reasonable value of the sand and gravel. The court expressly refused to find the reasonable value of the sand and gravel, but found that the contract price of 35 cents per cubic yard was a fair and reasonable value of the work of excavating and placing the sand and gravel on the tract ready for use. No evidence was produced by respondent as to the reasonable value of such work and the court could not resort to the contract for such value for the reason that the transaction was no part of the contract; in other words, the court could not resort to the grading contract—the only contract between the parties—to measure the voluntary service of hauling sand and gravel, a transaction separately sued upon and separate and apart from the grading contract. This item of $1,120 will be disallowed.

The view we take of the case that appellant breached his contract and that respondent not being in default had the right to recover for the reasonable value of his work performed before such breach, it is not necessary to consider the claim of appellant on his pleading (designated a cross-complaint) that he has been damaged in the completion of the contract of respondent. It should be noted, however, in passing, that the trial court found that appellant was not damaged in the completion of said contract, and that the amount he paid for completing such grading—nearly four times the contract price—"was unreasonable and exorbitant as a charge for such work."

From the judgment of $4,422.20 there will be deducted the sum of $1,120, leaving the sum of $3,302.20, for which amount the judgment will be affirmed with costs of appeal in favor of respondent.

Sturtevant, J., and Koford, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on April 20, 1928, and a petition by appellant to have the cause heard in the supreme court after judgment in the district court of appeal, was denied by the supreme court on May 17, 1928.