[Civ. No. 12274. First Dist., Div. Two. Apr. 22, 1943.]

LOUIS FERRARI, Respondent, v. PALMIRA MAM-
BRETTI, as Administratrix, etc., Appellant.

Norman A. Eisner, G. H. Winter, Anthony S. Devoto and Sylvester Andriano for Appellant.

Frank J. Perry and George Olshausen for Respondent.

NOURSE, P. J.—The plaintiff sued upon an implied contract to pay for the reasonable value of services alleged to have been performed for the decedent David Ferrari under an alleged oral contract to leave the plaintiff one-half of the estate. The cause was tried with a jury upon an amended and supplemental complaint based upon an amended claim filed and rejected; plaintiff had a verdict for $20,000, which

was approximately one-half of the appraised value of the estate; on motion for a new trial the trial court reduced the judgment to $12,500. The jury returned its verdict "in favor of Plaintiff Louis Ferrari and against Defendant Palmira Mambretti, as Administratrix of the Estate of David Ferrari, Deceased. . . ." The judgment on the verdict was in the same form. The defendant appeals from the reduced judgment upon typewritten transcripts.

The action rests upon an alleged oral contract made in 1921 when deceased was thirty-six years of age and plaintiff sixteen. Plaintiff was a second cousin of deceased. He had not attended school regularly, but had taken some work in the night schools. In 1921 he had a full time job with Levi Strauss & Company "packing and piling the goods." At that time Louis was living with his father, mother and a sister. David was living with the family. His father, mother, four brothers and two sisters were then living. David purchased the premises at 2599 San Bruno Avenue, San Francisco, in 1921 where he opened a general grocery store which was conducted by himself with the help of plaintiff's sister. He lived and ate his meals in a portion of the building set aside for that purpose. At this time he approached the parents of the plaintiff and requested that the boy be permitted to come and live with him and help in the grocery store in the evenings after his regular work and on Sundays. It appears in the testimony of plaintiff's witnesses that deceased then promised that he would compensate plaintiff by leaving him one-half of his estate.

Though this contract is unenforcible because not in writing (Section 1624, sub. 6 of the Civil Code) the terms of the original agreement of the parties are of importance in determining the rights of plaintiff to recover compensation under his plea of quantum meruit. The plaintiff endeavored to prove the contract by calling as witnesses his mother and sister who stated that they were present when the agreement was made. The testimony of these witnesses detailing the conversation is the evidence of the contract. The sister testified that David spoke of the good position Louis had with Levi Strauss and said: ". . . he thought that Louis, with his *business possibilities* would be a great help to him in all business affairs. 'As you know, I have no education, I don't read or write English, and this grocery business which I am going in is entirely new to me, which Louis and I have been talking about.'

"He then said to Louis, 'Louis, *if you will come in and live with me,* and help me in the store on Saturday afternoons and holidays and Sundays and nights when you are through with your work where you are now employed, and help me in my business affairs, with things that may occur from time to time, I will compensate you at the time of my death by leaving you half of my estate.'

"Louis said he wanted *to go and live with David* and do as David had asked him. David said to my mother and father, 'If you will consent to leave Louis come and live with us and help me in the store, I will assure you that at the time of my death I will leave him half of my estate.'

"My mother and father said they would consent and let Louis go and live with Dave as he would be nearby and could come and visit whenever he wanted, and they could also visit him."

The mother testified that she was present at the same conversation, that: "My nephew Dave spoke to my son Louis and he said to him, 'I need you to help me in my grocery store to transact the business after your working hours and on Sundays.'

"Then he asked him if he would come and live with him. My son replied yes.

"Then my husband, he asked my husband and myself if we were satisfied or contented that he come there with him, and we told him yes. He said that upon his death that he would leave him one-half of his possessions."

Evidence was then offered in behalf of plaintiff showing that he did live with the deceased from 1921 to 1927, when he married and moved to a nearby flat. In 1924 he had quit his work with Levi Strauss and entered a partnership in a nursery business. From that time he came to decedent's store during the noon hour, relieved the one clerk employed by decedent, and had his lunch with decedent from materials taken from the store. Testimony was offered tending to show that, at some times during the nineteen years of this relation, plaintiff helped decedent in picking chickens and turkeys, opened his mail, took trips for the purchase of supplies, advised in the purchase of real property and in insurance, took some produce of the vegetable garden to the wholesale market, and arranged with decedent to make a loan to one of plaintiff's friends. The relation of the parties continued until October, 1940, when David was murdered in a robbery attack made in his store. He died intestate.

On this appeal the first point raised is that the form of the verdict and the judgment are erroneous. Respondent concedes the point, but urges a modification instead of a reversal. Section 730 of the Probate Code provides that: ". . . the judgment must be that the executor or administrator pay, in due course of administration, the amount ascertained to be due." In *Moore* v. *Russell*, 133 Cal. 297 [65 P. 624, 85 Am.St.Rep. 166] and *Weygandt* v. *Larson*, 130 Cal. App. 304 [19 P.2d 852], judgments similar to that here were modified to comply with the code section. Whether the judgment and verdict should be modified or reversed for these reasons does not require a decision, since the judgment must be reversed upon more substantial grounds.

Appellant's second point relates to the procedure. A complaint was filed based upon a claim which had been presented to the administratrix and rejected. Thereafter, and within due time, a new or amended claim was presented and rejected. Plaintiff then filed an amended, or supplemental, complaint based upon the amended claim. Appellant argues that proper procedure called for a new action upon the new or amended claim. No authorities are cited to the point, but, for the reason just stated, it would serve no purpose to decide it here.

Appellant next attacks the evidence as insufficient to prove the contract of employment. She points to the "fantastic and incredible" testimony of respondent's sister who gave in detail the conversation heard twenty years prior, and directs attention to the testimony of the same witness given on cross-examination where the same conversation was repeated word for word, and without any variation. It is appellant's contention that the repetition of the identical words and phrases used on her direct examination discloses that this testimony was carefully prepared and rehearsed before the examination and that this court should reject it as inherently incredible. *Herbert V. Lankershim*, 9 Cal.2d 409 [71 P.2d 220] is cited holding that evidence of oral declarations of a deceased party should be received with caution, and that an appellate court would examine such evidence to determine whether it is sufficient to support the judgment. We do not understand that the Lankershim case made a new rule in appeals involving the question of the sufficiency of the evidence. Where a miscarriage of justice is apparent the evidence may be scrutinized more carefully, and when the evidence relates to declarations or oral admissions of a party, it will be received "with caution" as required by section

2061, subdivision 4 of the Code of Civil Procedure. It is true that the court quoted with approval from an early English case holding that in proceedings of this kind the evidence of the oral admissions must be ''satisfactory'' and ''convincing.'' The use of these words has been frequently criticized in our decisions, and we do not understand that, in the Lankershim case, the Supreme Court was departing from the rule that the weight of the evidence, and particularly the credibility of the witnesses, were each a matter for the trial court or jury.

Here the testimony of respondent's mother and sister, incredible though it may be, was sufficient when believed by the jury to prove that some kind of a contract was made in 1921. Whether it was the contract upon which the judgment is based we will discuss later.

 It is proper here to note that, since the contract testified to was unenforcible under the code section, it was necessary for respondent to show that there was no agreement to pay wages or compensation until the completion of the term of employment by the decease of the employer. This was necessary to avoid the plea of the statute of limitations and the presumption that wages become due as the services are rendered. To meet this contingency respondent states in his brief that the parties agreed that plaintiff should not be paid any wages and that no wages were paid him for any of his services during all the time of his employment. No reference is given to the transcript where such evidence may be found, and we have searched it in vain to find any evidence supporting this statement. The importance of this factor may not be overlooked. If the decedent promised to leave respondent half of his estate in lieu of wages it is one thing. If he intended to and did pay him wages for services rendered it is another case. If for the trivial services shown to have been rendered, plaintiff received compensation in the form of board and lodging, or wages paid, he cannot recover one half of the estate, in addition to such compensation paid, because that would simply render the statute of frauds meaningless, and nullify the statute of limitations.

The facts here are very similar to those in *Long* v. *Rumsey*, 12 Cal.2d 334 [84 P.2d 146]. There the plaintiff, when a young girl of seventeen, was taken into her cousins' family under an agreement to work in the bakery of her cousins *without wages*, live in their home, and receive all their estate

upon death of the survivor of them. In reversing a judgment for the plaintiff in that case the Supreme Court commented on the necessity of proving the feature of the contract not to pay until the death of the employer in order to avoid the statute of limitations. The court also commented upon the improbability of the arrangement which the plaintiff there sought to prove—a bond of employment of a girl of seventeen years with two able bodied persons to work for them without wages as long as they lived. As this comment is equally applicable here, where a sixteen year old boy claims to have bound himself to work for an able bodied cousin thirty-six years of age every "Saturday afternoons and holidays and Sundays and nights" as long as the cousin lived, we quote: "One circumstance which naturally tends to indicate such a situation [a bond to work for the life of the employer] is the fact that increasingly onerous services are rendered to a person in his declining years by one under no obligation to do so. It may be observed that it would be equally in accord with common experience to regard the fact that a youth makes his home with and renders service of a general nature to an able-bodied relative as much less persuasive in that regard."

Though *Long* v. *Rumsey* was reversed on the ground of the statute of limitations, there is a very strong intimation in the opinion that the contract to pay no wages for services as rendered and to compensate only at the death of the employers was not proved. We are faced with the same difficulty of finding any proof of the contract upon which the judgment rests. ■ The testimony is that the decedent promised to leave respondent half of his estate if the latter "will come and live with me, and help me in the store on Saturday afternoons and holidays and Sundays and nights . . . and help me in my business affairs." Here there is no time of employment, no agreement that respondent should bind himself to give all his nights, Saturday afternoons, Sundays and holidays to the deceased for any limited period. The only reasonable inference that may be drawn from the evidence is that deceased was looking for a companion, that "he had grown to like Louis as a son of his own", that he proposed to take the boy to his home, treat him as a son, give him his board and room, and leave him half of his property when he died. The reasonableness of this inference lies in the undisputed facts that the deceased was then a strong, healthy man, 36 years of age, unmarried, and unable to read or write

the English language; that the respondent was then a boy of sixteen, inexperienced in any business except "packing and piling the goods" in a factory making men's clothes, had some education in English, and could both read and write that language; and that the two had been living together at the home of respondent's parents for a number of years and had become very close companions.

For these reasons we conclude that respondent failed to prove the contract upon which his cause of action was founded. His complaint alleged that he agreed to "work in said store in the evenings and on Sundays." Also that respondent should contribute his sixteen years of experience "in business and financial affairs." But the undisputed evidence disclosed a different contract, if any,—that Louis agreed to come and live with deceased, and also to work in the store "on Saturday afternoons" and "holidays." Now an agreement to work for an unlimited time—here it became a period of twenty years—on "Sundays and evenings" is far different from an agreement to work "Saturday afternoons, Sundays and holidays and nights." When we study the testimony of respondent's witnesses we find the undisputed evidence of what respondent actually did in the beginning was to move in with deceased where he had a room and some meals and where he occasionally waited on a customer on a Sunday and during the evening when the men of the neighborhood made the store their meeting place for social or political conversation. Though the question of variance between the pleadings and the proof is not raised we refer to this feature for the benefit of the parties when the cause is retried, because, if the services outside the contract were not paid for when rendered, the presumption that they then became due determines the plea of the statute of limitations.

But, aside from all the foregoing, we cannot escape the conclusion that the judgment must be reversed because of the failure to make any proof of the reasonable value of the services. The respondent has listed as services for which compensation is sought—tending the store, plucking chickens and turkeys, marketing vegetables, handling produce in Lake County, consultation and advice on real estate transactions, advice concerning digging of a well, advice concerning insurance, opening the mail, and general handy man. Much of the testimony relating to the work in tending the store was directed to the noon period when Louis had quit his work with Levi Strauss and came to the store regularly for his lunch.

This work, if it had any compensable value in addition to the lunch received, was outside the terms of the contract. It is apparent that when the contract was made the parties did not contemplate that Louis would travel some four miles each noon period from his place of employment with Levi Strauss and give the decedent two hours of labor at that time. For the same reason the parties could not have contemplated work in the store on Saturday afternoons, and so the complaint simply sought compensation for ''evenings and on Sundays.''

When we examine the evidence as to the labor performed in the store evenings and Sundays we find nothing but generalities. Some witnesses saw respondent there some times during the twenty year period on Sundays: some saw him some times in the evenings; some saw him wait on a customer now and then; some saw him smoke a cigar and engage in the general discussion of the group of friends gathered there.

The same must be said as to the evidence relating to picking chickens. Whether this work was done five days in a year or fifty, and whether it was done for one year or twenty, does not appear. The evidence of the trips to Lake County for the purchase of grapes and turkeys, and of the trips to Marin County to purchase Christmas trees is of the same unsatisfactory character. It just appears that the boy went on some of these trips, either with the deceased or alone, and was gone one, two or three days. But whether the total of these excursions was five days or five hundred does not appear. The evidence of respondent's business and financial activities shows at the most that he was a close friend and confidant of the deceased, counseled with him in the purchase and sale of real property, procured one of his close friends to sell insurance to deceased, and opened some of the mail coming to the store. The undisputed evidence is, however, that at all times the deceased conducted his own banking business, attended to the purchase of real property, executed escrow agreements, and built up an estate which was appraised at over forty thousand dollars.

All this brings us to the most serious question raised by appellant, which is that there is no evidence of the value of the services rendered and no basis upon which the jury could determine value. The respondent concedes that there was no evidence of value (except the evidence of the oral agreement to compensate by will) but contends that such evidence was not necessary. The real controversy between the parties is when may the court or jury rely upon the

"common knowledge" (not "judicial notice" as stated by respondent) to determine the value of services in the absence of proof of value. The appellant cites and relies upon *MacIntosh* v. *Chicago Electric etc. Co.*, 44 Cal.App. 320 [186 P. 364]; *Boyd* v. *Ibbetson*, 90 Cal.App. 298 [265 P. 887]; *Nylund* v. *Madsen*, 94 Cal.App. 441 [271 P. 374]; *Miller* v. *San Francisco Church Exten. Soc.*, 125 Cal.App. 85 [13 P.2d 824]; *Moore* v. *Teel*, 6 Cal.App.2d 696 [45 P.2d 412]; and *Lundberg* v. *Katz*, 44 Cal.App.2d 38 [111 P.2d 917].

In the MacIntosh case the suit was for the reasonable value of work and materials in the repair of an automobile. The court reversed the judgment for plaintiff upon the sole ground that there was no evidence of the value of the work or materials. In the Boyd case the suit was for the reasonable value of services in hauling sand and gravel and the judgment for plaintiff was reversed upon the same ground. The Nylund case was a suit for the reasonable value of nursing services for the deceased during his last illness. A judgment for plaintiff was affirmed upon the ground that the value of such services was a matter of common knowledge and that the court or jury could fix such value without the aid of expert testimony. However, the court qualified this statement by adding: "The rule, of course, is limited to matters which are within common knowledge." The Miller case was a suit for the reasonable value of the services of an architect. The judgment for plaintiff was reversed upon the ground that there was no evidence of such value. The Moore case was a suit for the reasonable value of managing a bungalow court. A judgment for plaintiff was reversed for the same reason. The Lundberg case was a suit to recover the reasonable value of services rendered a deceased as housekeeper and nurse. The cause was tried without a jury and the court relied upon its own knowledge and experience in hiring help of that character. In affirming the judgment for plaintiff the appellate court stated the rule, supported by the citation of numerous authorities, as follows: "In matters of continuous domestic service, opinion evidence if given need not be followed if the trier of the facts is convinced that the opinion expressed is not sound. As a rule the facts do not call for the testimony of an expert. If the trier of the facts possesses the common knowledge of the value of such services, their reasonable value may be determined without the aid of opinion testimony."

The respondent cites *Spencer* v. *Collins*, 156 Cal. 298 [104

P. 320, 20 Ann.Cas. 49]; *John H. Spohn Co.* v. *Bender,* 18 Cal. App.2d 447 [64 P.2d 152]; and *Birkhofer* v. *Krumm,* 27 Cal. App.2d 513 [81 P.2d 609], and finds some comfort in language used in some of the cases cited by appellant. The Spencer case was a suit to recover attorney's fees. In a very full opinion the Supreme Court followed the accepted rule that a judge could draw upon his common knowledge and experience to determine the value of legal services, and that expert testimony of value was not necessary. The Spohn case was a suit to recover fees paid to a receiver under an award previously made by the superior court. The judgment for defendant was affirmed on the ground of estoppel, but in the way of dictum, the appellate court said that the superior court had power to determine the value of the services without expert testimony. The Birkhofer case was a suit to recover a deficiency remaining after a sale under a trust deed. In holding that inadequacy of the price obtained at the foreclosure sale was insufficient to set aside a sale otherwise valid, the appellate court said the courts and juries were not bound to accept "the opinion of a witness on a question of value" but that such opinion is to be weighed with other circumstances. This is far from saying that in matters of which the court, or the jury, has no knowledge, and which are not matters of common knowledge, a value can be fixed without any evidence to support it.

Of all the authorities cited we find none that disagrees with the rule as stated in *Lundberg* v. *Katz (supra)* that the court or jury may fix the value without evidence "If the trier of the facts possesses the common knowledge of the value of such services." Respondent does not defend the judgment on the ground that either the court or the jury had the knowledge requisite to determine the value of his services. Such defense could not be made under the circumstances of this case. It would be beyond reason to expect twelve jurors to possess the common knowledge of the value of services here sued for without any evidence of the time occupied, or the perquisites, or accommodations received in the nature of living expenses. It would be beyond reason to expect these jurors to know the value of these services in 1921, and for nineteen years thereafter, without some evidence to aid them. (We do not say expert testimony.) This is the more patent when we recall that the services sued for consisted of eight or ten separate and unrelated activities.

Respondent argues that the contract itself, though

unenforcible, is evidence of such value. The appellant does not reply to this, but we are not satisfied that the rule is applicable. The contract fixed no value; it called for services which were not rendered, and it did not call for services which were rendered. The undisputed evidence is that the contract obligated respondent to live and make his home with the deceased. This he did for five or six years. Then he married and raised his own family. If the contract was not breached in its entirety at that time, (*Long* v. *Rumsey, supra*) the services alleged to have been rendered were so far different from those contemplated by the contract that the price fixed in the contract could not supply the absence of proof of the value of the services. And then the contract did not fix a definite "price," but this was dependent upon the value of the estate at the time of the death of the employer, an item which could not have been within the knowledge or contemplation of either party.

If for no other reason, the judgment must be reversed for the error in the admission of the testimony of respondent's mother. Over objection of appellant this witness was permitted to testify that for sixteen years she had cooked and washed the clothes for the deceased and had not been paid. This was testimony which the appellant could not meet and could not deny. The voluntary statement that she did this for the sake of her son (who had married and was not living with deceased) merely emphasized the purpose of the inquiry —to create prejudice against the deceased and sympathy for the respondent and his aged mother. The explanation that this line of testimony was sought to show that the mother was frequently about the store premises and knew what occurred there, is not persuasive since it was not followed by any inquiry on that line. The testimony was not admissible for any purpose, and its admission was clearly prejudicial to appellant.

The judgment is reversed.

Spence, J., concurred.

A petition for a rehearing was denied May 22, 1943, and respondent's petition for a hearing by the Supreme Court was denied June 17, 1943. Gibson, C. J., Carter, J., and Schauer, J., voted for a hearing.