[Civ. No. 15186.   Second Dist., Div. One.   June 26, 1946.]

MARY BELLETICH, Respondent, v. JULIUS POLLOCK, as Executor, etc., Appellant.

Harry A. Franklin and Ernest C. Griffith for Appellant.

F. M. Andreani for Respondent.

DORAN, J.—The action herein was instituted after plaintiff's claim for $6,500, "balance on account of and for nursing, personal care and attention, aliment and lodging from January 1, 1929, to April 22nd, 1944," of plaintiff's uncle, Joe Listar, had been rejected by the appellant executor. The case went to trial before a jury which returned a verdict in favor of the plaintiff Mary Belletich, in the sum of $5,000. The defendant's motion for a new trial was denied but the trial court modified the judgment to the effect that the same was to be paid during the course of administration.

The complaint, setting forth three causes of action substantially the same, was, in the language of Count I, for "work, labor and services performed by said Plaintiff for said deceased at his special instance and request," continuously during said fifteen-year period, "pursuant to an oral agreement that payment therefor was to be made upon the termination thereof, to wit: Upon the death of said Joe Listar; that said work, labor and services were reasonably worth the said sum." The other two counts merely give a more elaborate description of the work claimed to have been performed. A general and special demurrer was interposed to the complaint, raising, among other points, the two-year statute of limitations. The demurrer was overruled and an answer filed by the executor, denying any liability and pleading section 339(1) of the Code of Civil Procedure, the two-year statute of limitations applying to actions upon contracts "not founded upon an instrument in writing." A bill of particulars was furnished by plaintiff claiming $7,400 less a credit of $900, "con-

sisting of cash payments of ten dollars per month from January 1, 1931, to July 1, 1938,'' made by the deceased to the plaintiff, leaving a balance of $6,500.

The appellant's initial contention that the evidence is insufficient to support the judgment, necessitates a brief analysis of the testimony. It appears that Joe Listar died testate on April 22, 1944, his closest relatives being a sister, Dora Sambol, and a brother, Mike Listar. The will left all of the testator's property to Nick Listar, a son of Mike Listar. Mary Belletich, plaintiff, is the daughter of Dora Sambol and therefore a niece of the deceased. The record discloses that in 1929, Joe Listar, a steel worker, apparently in good health, came to live at plaintiff's home; that in September 1929, Listar married one Mary Jasyn from whom he was divorced on December 4, 1935, and that for four years during such marriage Listar and said wife lived together at a place other than the plaintiff's home. Plaintiff's husband testified that the deceased gave the plaintiff certain ten dollars payments per month covering board and room for ''pretty near two years'' during 1936-37; that in 1937 Listar purchased a house and went there to live, continuing to live there until Listar's death in 1944 except that on occasions of sickness and injury when deceased stayed at the plaintiff's home. It further appeared that plaintiff, from time to time, rendered certain other services such as cleaning, laundry work, etc.

Proof of the oral contract to pay for plaintiff's services, alleged in the complaint, rests upon statements made by the deceased, testified to by several witnesses including plaintiff's husband, daughter and mother. Appellant's brief comments on the fact that ''The remarkable part of this case is that every witness that testified for the plaintiff used practically the very same words that the deceased stated 'I will pay you after I am dead.' '' An examination of the record discloses that the witnesses were indefinite as to when such statements were made, and the exact time and extent of plaintiff's services except as to a two-year period in 1936-37 when plaintiff was paid $10 per month for board and room. There was no testimony as to the value of the alleged services.

■ One of appellant's primary contentions is that under the provisions of Code of Civil Procedure, section 339(1) prescribing a two-year statute of limitations in actions on contracts ''not founded upon an instrument in writing,'' the trial court ''should have limited the jury to deciding the

value of services rendered during the last two years of the deceased's life.'' The court overruled a motion to so limit the jury and refused to give appellant's proposed instructions on this subject. In answer to this contention the respondent relies upon *Reeves* v. *Vallow*, 16 Cal.2d 95 [104 P.2d 1017], the syllabus of which states the rule as follows: ''When a plaintiff has performed continuing services for another at the latter's special instance and request, upon an oral agreement that payment is to be made at the termination of the services, as at death, recovery may be had for the reasonable value of such services, as distinguished from the contract price therefor; and when payment is to be made at the death of the promisor the statute of limitations does not begin to run until the termination of the services by death, and the plaintiff is not limited to a recovery of the value of the services rendered during the two years prior to such death.'' And in the later case of *Winder* v. *Winder*, 18 Cal.2d 123, 127 [114 P.2d 347, 144 A.L.R. 935], the court said that ''It is the settled law of this state that when continuous personal services are performed under an express agreement for compensation upon termination thereof . . . unenforceable because not in writing . . . the reasonable value of the services may be recovered and that the statute of limitations does not commence to run until the termination of the services, which, in such cases, is usually upon the death of the promisor,'' citing *Long* v. *Rumsey*, 12 Cal.2d 334 [84 P.2d 146], and other cases. That such is the rule, cannot be doubted.

Commenting on this rule, the appellant calls attention to the fact that in order to escape the application of the two-year statute of limitations, the cases require that there must be *continuous* services rendered, and that the evidence in the present case shows that any services rendered by plaintiff were far from continuous, being interrupted for a period of four years during the married life of the deceased, and thereafter when the deceased went to live in his own house as hereinbefore mentioned. In reference to this matter the trial court refused to give appellant's Instruction V, reading as follows:

''If you find from the evidence that plaintiff's services were not continuous, but were intermittent, and that such interruption was not through the wrongful act of the decedent, Joe Listar, such interruptions of services will destroy the continuity of the services which the law requires, and the plain-

tiff cannot recover anything on the theory of a contract to pay at death." Upon the question of serious interruptions in the rendition of services, respondent quotes from *Seib* v. *Mitchell,* 10 Cal.App.2d 91 [52 P.2d 281], holding that interruptions "caused from the wrongful temporary discharge by decedent" would not destroy the continuity required by the law. However, there appears to be no claim of any wrongful discharge by decedent in the present case, and the citation is not helpful.

. The word "continuously," as defined in 13 Corpus Juris 209, means, "With continuity or continuation; unbrokenly; uninterruptedly; without intermission or cessation; without intervening time, implying an unbroken sequence." The statute of limitation is certainly as important in an action on a claim against an estate, as it is in an action between living persons; to eliminate or disregard the term "continuous" or "continuing," in respect to plaintiff's services, as used in *Winder* v. *Winder,* 18 Cal.2d 123 [114 P.2d 347, 144 A.L.R. 935], *Reeves* v. *Vallow,* 16 Cal.2d 95 [104 P.2d 1017], *Long* v. *Rumsey,* 12 Cal.2d 334 [84 P.2d 146], previously referred to, and other cases, would open a broad avenue to designing claimants seeking unauthorized personal gain at the expense of a decedent's estate. Plaintiff's complaint was definitely predicated upon the allegation that the services had been rendered "continuously during said period of time" (between Jan. 1, 1929, and April 22, 1944). Viewing the evidence in the light most favorable to the respondent and considering the interruptions hereinbefore mentioned, there can be no doubt that this question was a vital issue in the case, and that the failure of the trial court to submit such issue to the jury amounted to prejudicial error.

After properly instructing the jury in Instruction XXI, that "Where there is a blood relationship between the parties, it may be inferred, in the absence of a direct understanding to the contrary, that pecuniary compensation was not expected," the jury was further told in Instruction XXII that "The fact that the plaintiff and the decedent, Joe Listar, were niece and uncle should be considered in connection with the rule, that where one performs for another with the other's knowledge useful services, the law implies that such services shall be paid for." In the latter instruction there is an apparent if not an actual contradiction of the previous instruction, and the jury may well have understood from it that

because of the relationship between the parties, "the law implies that such services rendered shall be paid for." Such, of course, is not the law, and as said in 27 California Jurisprudence, page 204, "Where services are rendered between the members of a household or between those most closely related by blood, the law will ordinarily presume that they were prompted by motives of love, friendship and kindness, rather than the desire to gain." Since the obvious purposes of instructions is to clarify the law for the jury, the giving of contradictory instructions resulting in a confused and misleading picture, can hardly be other than prejudicial error. In such a situation, respondent's assertion that "The charge to the jury must be read as a whole," is not a sufficient answer.

■ The appellant requested instructions to the effect that evidence of the admissions of the deceased, should be viewed with caution, and these the trial court refused to give. In this connection it will be remembered that plaintiff's proof of the alleged contract, consisted of statements by the deceased that "I will pay you after I am dead," or words to that effect. This matter has received attention in various cases, and in *Herbert* v. *Lankershim,* 9 Cal.2d 409, 472 [71 P.2d 220], the court said: "The rule in cases such as the one before us is that the court must view the transaction with the 'most scrutinizing jealousy'. This means, of course, any court in which the issue may be raised. Oral evidence, of which there is no satisfactory independent corroboration, is the weakest kind of evidence known to the law. In *Smellie* v. *Southern Pac. Co.,* 212 Cal. 540 [299 P. 529], this court, . . . said: 'Evidence of the declarations or oral admissions of a party are always received with caution. (Code of Civ. Proc. sec. 2061, subd. 4.) . . . A third inherent weakness . . . is that it purports to give the statements or declarations of a deceased person. . . . In *Mattingly* v. *Pennie,* 105 Cal. 514 [45 Am.St. Rep. 87, 39 P. 200] this court in bank said, "No weaker kind of testimony could be produced." Again in bank (*Austin* v. *Wilcoxson,* 149 Cal. 24 [84 P. 417], this court has said: "It is not stating it too strongly to say that evidence so given under such circumstances must appear to any court to be in its nature the weakest and most unsatisfactory." ' (*Estate of Emerson,* 175 Cal. 724, 727 [167 P. 149, 151].)" In the instant case the cautionary instructions requested were clearly

applicable to the situation presented by the evidence, and under the rule announced in the above cases, should have been given.

The appellant argues that the evidence is insufficient to support the judgment, and that "A reading of the transcript of plaintiff's witnesses shows both on direct and cross-examination, a complete failure to state times and places with any degree of certainty, so that the work of the plaintiff if any, could be analyzed in the light of evidentiary value. . . . No testimony was introduced as to the value of the services." Respondent relies upon the well known principle stated in *Estate of Isenberg*, 63 Cal.App.2d 214, 216 [146 P.2d 424], "that on appeal an appellate court will (a) view the evidence in the light most favorable to the respondent, (b) not weigh the evidence, (c) indulge all intendments which favor the finding of the trier of fact, and (d) not disturb the finding . . . if there is substantial evidence in the record in support thereof." However, as said in *Herbert* v. *Lankershim*, 9 Cal.2d 409 [71 P.2d 220], this rule of noninterference "does not relieve an appellate court of its duty of analyzing the evidence in the light of reason and human experience and giving consideration to the motives and propensities which tend to influence or prompt human action, in an effort to solve the question as to whether the judgment is reasonably and substantially sustained by the evidence."

■ In reference to appellant's contention that there was no evidence of the value of plaintiff's services, respondent cites the rule stated in *Lundberg* v. *Katz*, 44 Cal.App.2d 38 [111 P.2d 917], and approved in *Ferrari* v. *Mambretti*, 58 Cal. App.2d 318 [136 P.2d 326], that "the court or jury may fix the value without evidence 'If the trier of facts possesses the common knowledge of the value of such services.'" It may be noted, however, that in the Lundberg case, the plaintiff moved into the home of deceased and rendered domestic services *continuously* until the death of the deceased; a factual situation quite different from that disclosed by the record in the instant case. In the Ferrari case plaintiff sought recovery under an oral contract to leave plaintiff one-half of the estate in return for work in decedent's store in the evenings and on Sundays. Commenting on the rule as stated in *Lundberg* v. *Katz*, above referred to, the Ferrari opinion reviews the various cases dealing with this question and concludes that "It would be beyond reason to expect twelve jurors to

possess the common knowledge of the value of services here sued for without any evidence of the time occupied, or the perquisites, or accommodations received in the nature of living expenses. It would be beyond reason to expect these jurors to know the value of these services in 1921, and for nineteen years thereafter, without some evidence to aid them.'' In view of the fifteen-year period during which plaintiff's' services are alleged to have been rendered, the latter quotation is not inapplicable to the present situation.

As said in *Herbert* v. *Lankershim,* 9 Cal.2d 409, 476 [71 P.2d 220], ''In the state of the evidence in this case it is a very serious question whether, as a matter of law, the evidence adduced by the plaintiff is sufficiently substantial to support the judgment. In cases in which a serious doubt is created in the mind of the reviewing court . . . it becomes the duty of the court to consider carefully the errors complained of, and if it should appear upon such consideration that the errors committed probably prejudiced the case . . . it is the duty of the court to order a retrial of the cause. In such cases the provisions of article VI, section 4½ of the Constitution cannot be invoked in aid of the affirmance of the judgment, unless it can be said that the justice of the cause preponderated so heavily on the side of the prevailing party that none of such errors did or could have contributed to or resulted in a miscarriage of justice.'' The above quotation is particularly pertinent in view of the lack of definite evidence showing the amount of work performed by the plaintiff, the hours, days, weeks or months consumed therein, or in fact, the exact time when the services were performed. In this state of the record, again quoting from the Herbert case, ''a serious doubt is created in the mind of the reviewing court'' as to the evaluation used by the jury in arriving at its verdict of $5,000, and the sufficiency of the evidence of value, or any concrete basis upon which the jury could so find. This situation is the more apparent when the intermittent nature of the services covering a period of some fifteen years, is considered, and the possible application of the statute of limitations. During this period plaintiff, a married woman with two children, took care of her own home and kept boarders and roomers; it is not unreasonable to suppose that a large portion of plaintiff's time must therefore have been consumed in the discharge of general household duties. Likewise, dur-

ing some four years of this period the deceased was married and living with his wife, and for many other years thereafter resided on his own property. Further, according to the bill of particulars, plaintiff had been paid the sum of $900, at the rate of $10 per month for board and room furnished to the deceased between 1931 and 1938.

In view of the state of the record hereinbefore referred to the errors commented upon must be deemed prejudicial. The attempted appeal from the order denying a new trial is dismissed. The judgment is therefore reversed and the cause remanded for a new trial.

York, P. J., and White, J., concurred.