HON. HOMER E. ROYCE,
HON. TIMOTHY P. REDFIELD, } ASSISTANT JUDGES.

---

ULYSSA BRIGGS *v.* THE ESTATE OF ALFRED BRIGGS.*

*Report of Auditor. Practice. Implied Promise.*

Where the auditor detailed facts and circumstances in his report, and then said that, "from the facts and circumstances above stated, I find," &c., and submitted to the court whether he had erred in the law of the case, it was *held*, that the construction. of the report was, that the auditor based his findings *wholly* upon the facts and circumstances stated in the report.

The finding of a fact by an auditor, is, usually, conclusive of its existence upon the county court; but if the fact found is merely an inference, or a fact which the law would infer from other facts found and stated by the auditor, and the auditor has made a mistake in the law as applicable to the facts stated by him, and so erroneously inferred a fact to exist, the county court may disregard his findings, and make such inference as the law warrants from the facts stated, and render judgment accordingly.

The plaintiff was the maiden sister of the intestate, and never made his house her home prior to August, 1865. She then went there to see the intestate's sick daughter, who died soon after. At this time the intestate was single, and continued so till his -death,

---

*This case was decided at the February term, 1873.¶

Briggs v. Estate of Briggs.

April, 1870. After his daughter died, he had no relatives in his house but the plaintiff. Soon after his daughter's death, the plaintiff commenced taking charge of the intestate's domestic affairs, but without his request. She labored diligently for him, and did more than he desired her to do, until she became disabled by accident. After she had partly recovered, she continued to work as before, until the intestate's death. It did not appear that the intestate ever expressly requested the plaintiff to remain with him; but he expressed to others his pleasure at her being with him, and his appreciation of her services, and spoke of the inconvenience and unpleasantness of her leaving, and conjectured what he should do if she did leave. The plaintiff never asked the intestate to settle with her, or to pay her, and never kept any account with him. She occasionally received articles of clothing from him, and one time ten dollars in money, as she was about to go on a journey; and she occasionally got articles at the store on his credit, and showed him the bills thereof. The intestate kept no account with the plaintiff, and her name did not appear on his books. Entries of cash paid out for her for a doctor and other things while sick, were found on his cash book. After she recovered from her injury, she expressed a desire to do all she could for him, because he was put to so much expense on her account while she was sick. Held, that from these facts, the law would imply a promise on the part of the intestate, to pay the plaintiff for her services.

APPEAL from the probate court.  An auditor was appointed, who reported as follows:

" The plaintiff's account consisted of a single item for services in the family of the intestate during his lifetime, and down to the time of his decease, which event occurred suddenly and by accident, April 1st, 1870.  The plaintiff presented no book, and during the time the services were rendered, kept no account with the intestate, either of debt or credit.  She was the maiden sister of the intestate, and had never, prior to August, 1865, made the house of the intestate her home, although she had made visits there of considerable length.  In August, 1865, the daughter of the intestate, then residing with him, was dangerously ill.  The plaintiff, then living in Grafton, Vt., and making her home with her aunt in that town, came to Manchester, Vt., where the intestate resided, and to the house of the intestate, from a desire to see her niece before she died, and without invitation or request of the intestate.  She remained at his house till the decease of the daughter, about four weeks.  The intestate was at that time, and continued to be until his decease, single ; his wife having died previously to the death of his daughter ; and after his daughter's death, he had no relative in his family except the plaintiff.  His only surviving child was a married daughter residing in Grafton, Vt.

" He was often visited by relatives, and during one fall and winter, an uncle of the parties boarded with them.  The services for which the plaintiff has charged, commenced shortly after the daughter's death ; the plaintiff remaining with the intestate, so far as it appeared in evidence, without his request or invitation.

She took the charge of his domestic affairs, and labored diligently, and did more than the intestate desired her to do, until she became disabled by accident, and then again, as soon as she had partially recovered from her disability, until the death of the intestate ; during all which time, in which she had charge of the household affairs and so labored, it does not appear that there was any express request of the intestate that the plaintiff should remain ; but on several occasions, he expressed his pleasure to others that she was with him, and his appreciation of her services, and spoke of the inconvenience and unpleasant consequences which would follow her leaving him, sometimes adding that he did not know what he should do if she *should* leave him ; that he would have to go to the tavern to board ; that he wanted a home where he could invite his friends.

" The plaintiff made no demand upon the intestate for payment or for a settlement, and presented no claim until the last sitting of the commissioners of claims ; but there had, after the death of the intestate, been negotiations between her and the daughter and sole heir of the intestate, in regard to compensation for her services.

" The plaintiff, during the time she resided with the intestate, received articles of clothing from him, and at one time ten dollars in money, as she was about to start on a journey. She occasionally went to the stores and obtained articles necessary for her clothing on his account, and brought to him a bill or memorandum of the things so purchased. It also appeared that the intestate had been accustomed to make presents to other domestics to whom he paid wages. She sometimes purchased articles with her own money. The intestate kept no account with the plaintiff whatever, either of debt or credit, and her name did not appear on his account books, or on any memoranda found after his decease. Certain items of cash paid by him to physicians who attended upon the plaintiff shortly after she was injured, were found in his cash book, and the memorandum marked A, hereto appended, being in his handwriting, was also found with his books or papers, and was presented in evidence. After the plaintiff had partially recovered from her injury, she expressed to others a desire to do all she could for the intestate, because he had been put to so much expense on her account while suffering from the injury. The estate of the intestate was worth about $18,000 at the time of his death. At the hearing the plaintiff did not testify. The administrator, and also his wife, who is sole heir to the intestate's estate, testified without objection. The counsel for the plaintiff

did not offer her as a witness, supposing that under the statute, she was not a competent witness.

" From the facts and circumstances above stated, I find that it was not the expectation of either party when the plaintiff commenced her services for the intestate, nor at any time previous to his death, that he was to pay her wages for her services, or that she was to account for the money received by, or expended for her, or for any articles received by her or procured on his account. I therefore find that there is nothing due from either party to balance book accounts between them.

" If, however, I have erred in any matter of law in this case, and if the plaintiff is entitled to recover for her services at their true value, less the money paid to or expended for her, and the articles received by her, then I find that there is due to the plaintiff from the estate of the intestate, to balance book accounts, the sum of $573.24 ; and as to the accounts, I further report that the account in offset presented by the administrator, was claimed only in case the estate be found by me to be indebted for the services of the plaintiff ; and further, that the plaintiff having at no time made any demand of the intestate for a settlement or for payment during his lifetime, I allow to her interest only from the time of his decease ; and further, I allow to the estate the sum of one hundred dollars delivered to the plaintiff after the decease of the intestate, there being no objection to such application and allowance made by the plaintiff."

The memorandum marked A, referred to in the report, was not furnished the reporter, unless this is it :

| | | |
|---|---|---|
| " 1868, Jan'y 9, | Paid Dr. Moseley, | $6.00 |
| | Paid to drug store, | 1.50 |
| Feb'y 18 | Paid to drug store, | 1.00 |
| | Paid | 30.00 |
| | Paid Osman, | 22.75 |
| | Paid Osman, | 20.00 " |

The court, at the December term, 1872, WHEELER, J., presiding, rendered judgment on the report for the plaintiff, *pro forma ;* to which the defendant excepted.

*C. N. Davenport,* for the defendant.

The plaintiff cannot recover upon the facts reported. No person can be made debtor to another without a contract express or implied. Where a request to perform services is made, the law implies a promise to pay what those services are worth. So where

valuable services are performed with the knowledge and consent of the beneficiary, a request to perform and a promise to pay are ordinarily presumed, where the parties stand in the relation of strangers. But this presumption never arises contrary to the intent or expectation of the parties. To entitle the plaintiff to recover, it is not enough to show that she performed valuable services, and that she had not been paid. She must show that she performed them, expecting at the time to be paid therefor, that her brother so understood it, or that he had sufficient reason to understand her purpose, to make him her debtor for the services. *Fitch* v. *Peckham, exrx.* 16 Vt. 150 ; *Andrus et ux.* v. *Foster,* 17 Vt. 556 ; *Cobb et als.* v. *Bishop & Tr.* 27 Vt. 624 ; *Admr. of Way, Jr.* v. *Estate of Way,* 27 Vt. 625 ; *Davis* v. *Goodenow,* 27 Vt. 715 ; *Putnam* v. *Town,* 34 Vt. 529 ; *Sprague, admr.* v. *Waldo, admr. et al.* 38 Vt. 139 ; *Lunay* v. *Vantyne,* 40 Vt. 501 ; *Harris* v. *Currier et al.* 44 Vt. 468.

It was claimed in the court below, that the cases where it had been held that an express promise or a prior request was essential to a recovery for services performed, were confined to those arising between parent and child, or persons standing *in loco parentis.* This is not true in fact ; but if it were, the principle upon which the cases stand is not affected. It is the *family relation* in which the parties stand, that overcomes the ordinary presumption. It makes no difference in what degree the parties are connected by blood or affinity, provided the family relation subsists. LOWRIE, J., in *Lantz* v. *Frey & wife,* 19 Penn. 366, says : " When individuals stand to each other in a family relation, as distinguished from that of master and servant, the law implies no contract for wages. This relation must first be changed." See *Davies* v. *Davies,* 9 C. & P. 87.

*H. K. Fowler* and *L. S. Walker,* for the plaintiff.

There is nothing in this case to distinguish it from the ordinary case of master and servant. If no blood relation had existed between the plaintiff and the intestate, we apprehend the plaintiff's right to recover would not be questioned. In this state the principle has never been recognized, that an express

promise or prior request is essential to a recovery for services performed, except in cases arising between parent and child or persons standing *in loco parentis*. Such are the following cases. *Fitch* v. *Peckham*, *exrx.* 16 Vt. 150 ; *Andrus et ux.* v. *Foster*, 17 Vt. 556 ; *Lunay* v. *Vantyne*, 40 Vt. 501 ; *Harris* v. *Currier et al.* 44 Vt. 468 ; *Guild* v. *Guild*, 15 Pick. 129. We claim that the relation, whatever it may be, that would rebut the presumption of a promise, must have existed anterior to the service claimed for, and cannot have its inception in, and grow out of, the service for which compensation is claimed. It must apply to the first day's work the plaintiff did, or not at all.

The opinion of the court was delivered by

Ross, J. The only doubt we have had in regard to the correctness of the judgment of the court below, is occasioned by that clause in the auditor's report in which he states : " From the facts and circumstances above stated, I find that it was not the expectation of either party when the plaintiff commenced her services for the intestate, nor at any time previous to his death, that he was to pay her wages for her services, or that she was to account for the money received by or expended for her, or for any articles received by her, or procured on his account." If the plaintiff could have been a witness in her own behalf, and had admitted that such was her expectation, it would have furnished a complete answer to her claim against the estate. The law, when no express promise is shown to pay for services, never raises or implies a promise to pay for such services, contrary to the expectation of the parties as it existed at the time the services were performed. If this finding by the auditor is to be regarded as an inference drawn wholly from the facts and circumstances before stated by him, without the existence of any other facts or circumstances in the case to influence him in making such finding, we are all agreed that it is not warranted by the facts and circumstances stated by him, and might be disregarded by the county court in rendering its judgment. We are inclined to think it is capable of receiving this construction. The auditor says : " From the facts and circumstances *above stated*, I find," &c., thereby limiting·

his finding to an inference from the facts and circumstances stated by him. Immediately following this finding, the auditor further says: "If, however, I have erred in any matter of law in this case," there is due the plaintiff, &c. The finding of a fact by the auditor is, usually, conclusive of its existence upon the county court. If, however, the fact found is merely an inference, or a fact which the law would infer from other facts found and stated by the auditor, and the auditor has made a mistake in the law, as applicable to the facts stated by him, and so erroneously inferred a fact to exist, the county court may disregard the finding of the auditor, and make such an inference as the law would warrant from the facts stated, and render judgment accordingly. The decision and judgment of the county court must stand, unless error is made to appear. We think from the explicit statement of the auditor that he found that the plaintiff did not expect pay for her services from the facts and circumstances stated by him; the county court was justified in disregarding that fact in rendering its judgment, if the law would not warrant the finding of such fact from the facts and circumstances stated by the auditor. We think the law does not justify the auditor in inferring that the plaintiff did not expect pay for her services, from the facts and circumstances stated by him. In all the cases in which it has been held that the law will not imply a promise to pay for valuable services rendered with the knowledge of the recipient, such a relation has existed between the parties before the rendering of the services, that the defendant was not bound to pay for the services. This relation is usually that of parent and child. When the child arrives at majority, but remains with or returns to the parent, or when the parent goes to live with the child, the law presumes the parties have retained or returned to the relation that once existed between them, and will not presume that they thereby assumed the relation of debtor and creditor, unless it is shown that they mutually understood that they came together with their relation changed from what it formerly had been, to that of debtor and creditor. In all the cases cited by the defendant's counsel, the relation of parent and child had once existed between the parties. We are not aware of any decided cases in which it is held that

74

the law will not imply that the relation of debtor and creditor exists, where one labors for another with his knowledge and approval, except in cases where the parties, at some time previous to the rendition of the services for which payment is demanded, have stood in such a relation to each other that the rendition of such services by the plaintiff did not make the defendant his debtor. We do not say such a relation might not exist between brother and sister. It might. The brother might have brought up the sister, and so stood to her in the double relation of brother and parent; or they might have been bereft of their parents when minors, and continued the family relation till of age. If in such case the brother continued to live upon the homestead, and the sister, after having been away, returned to live with him, we think the law might presume she returned to the relation she once had with her brother, and, by rendering him services, *might* not make him her debtor, unless they were rendered under such circumstances as to .show she expected to receive pay for her services. It is evident that the auditor had the impression that the fact that the plaintiff and intestate were blood relatives, rendered it necessary for her to show an express promise, or what in law would amount to an express promise, by the intestate to pay for plaintiff's services. It is true that the relation, a return to which would not raise the presumption of debtor and creditor between the parties, generally exists between blood relatives, but not always. It has been held to exist between foster-child and foster-parent. Relation by blood, or the family relation, does not rebut the ordinary presumption that valuable services are to be compensated; but the fact that the parties have once so stood related to each other that the one rendering services could not exact payment therefor of the other. In the case at bar, it does not appear that the plaintiff, by remaining with the intestate after his daughter's decease, resumed a relation which had once existed between them, in which the performance by her of valuable services for him, with his knowledge and approval, did not place him under obligation to make compensation. The law will not presume that such a relation once existed between them, simply because they were brother and sister. The case finds that the plaintiff never had, up to the

time of his daughter's decease, made the intestate's house her home. She then took upon herself the charge of his house with his knowledge and approval, and rendered him valuable services, which the law implies a promise to make reasonable compensation for. From the fact they were brother and sister, they might have had more confidence in each other, and not have dealt with each other with the exactness either of them would have done with a stranger. The time she rendered him service, was well known, as probably was what he had paid for her. The latter we infer from the entries found to exist in his cash-book, and from the memoranda of expenses paid for her when she was sick, and especially of what he paid the doctors, as well as the fact that she usually brought him a bill of what things she obtained for herself on his credit. Though neither party had any formal book account against the other, they, between them, had sufficient data to enable them to settle at any time. We have no doubt from the facts stated, if the plaintiff had left the intestate's employment (for we cannot consider it in any other light) during his life, the parties would amicably have settled, and he would have compensated her reasonably for her services for him, and that such was their mutual expectation during the time of service. We have no doubt but the auditor would have come to the same conclusion, had it not been that he labored under the impression that, because the plaintiff was sister to the intestate, therefore what would in law amount to an express promise to pay for her services, must be shown, to enable her to recover.

Judgment affirmed.