[L. A. No. 17855. In Bank.—June 19, 1941.]

JEROME E. WINDER, Respondent, v. JOHN R. WINDER, as Executor, etc., Appellant.

William Ellis Lady for Appellant.

W. Neil Randolph and Percilla Lawyer Randolph for Respondent.

SHENK, J.—The plaintiff, Jerome E. Winder, and John R. Winder, named as the defendant executor, are the surviving sons of Ray Elizabeth Winder, deceased. They were appointed co-executors in her will, wherein she left her entire estate to her grandchildren. After the will was admitted to probate, the plaintiff presented to his co-executor a claim against the estate in the sum of $6,500 as the reasonable value of services rendered to the decedent from 1918 to the date of her death on February 12, 1938. The defendant executor rejected the claim and the plaintiff brought the present action thereon within the period limited by section 714 of the Probate Code. The plaintiff had judgment for the sum of $2,700. The defendant appealed.

The first question to be considered is whether the claim was properly presented to the defendant co-executor and the action properly brought against him on the rejected claim.

Section 703 of the Probate Code provides: ''If the executor or administrator is a creditor of the decedent he shall file his claim with the clerk, who must present it for allowance or rejection to the judge. . . . If the judge rejects the claim, action thereon may be had against the estate by the claimant,

and summons must be served upon the judge, who shall appoint an attorney at the expense of the estate to defend the action. If the claimant fails to recover, he must pay all costs, including defendant's reasonable attorney's fees, to be fixed by the court.''

The defendant contends that the claim was improperly presented to him as co-executor and that the court had no jurisdiction of the action in the absence of a presentation in compliance with said section 703. The plaintiff contends that where there are two executors, the provisions of the Probate Code are satisfied if the claim of one co-executor is presented to the other, and upon rejection an action is brought thereon naming the other co-executor as defendant.

Section 711 of the Probate Code provides that when a claim is presented to the executor or administrator before filing, he must endorse thereon his allowance or rejection. If the claim is allowed, it must be presented to the judge, who must endorse upon it his rejection or approval. Section 714 provides that when a claim is rejected and written notice is given to the claimant, suit must be brought against the executor or administrator within the specified time. Section 570 of the Probate Code provides: ''When two or more executors or administrators have been appointed and one or more are absent from the state, or legally disqualified from serving, the act of the other or others shall be effectual for all purposes. . . . ''

Admittedly the plaintiff, as a claimant against the estate, was disqualified from acting in the capacity of executor for the purpose of receiving and acting upon his own claim. But this disqualification did not extend to his co-executor whose acts, by the express provisions of section 570, were made effectual for all purposes. Speaking of the foregoing provisions, then a part of the Code of Civil Procedure, the court in the case of *Gallivan* v. *Jones,* 102 Fed. 423 [42 C. C. A. 408], said: ''These provisions clearly cover and apply to cases where there is more than one executor or administrator, and one of them is a creditor of the estate; for in all such cases there is a qualified representative of the estate, capable of acting, and who is by the statute required to act, on the claim. But the legislature of the state recognized the fact that there might be cases in which there would be but one executor or administrator, who himself might have a claim

against the estate . . . '' and as to which special provision was made for presentation of the claim and action thereon, if rejected. In the Gallivan case the court approved the filing of the action on the claim naming the co-executor rather than the estate as defendant. (See, also, Prob. Code, sec. 573; 11 Cal. Jur. 698, 773; 11A Cal. Jur. 772; 11B Cal. Jur. 315.) The defendant's contention that it would open the door to fraud and collusion between co-executors to permit one executor to present his claim to his co-executor is without merit. The provisions of the code requiring that any claim approved by an executor or administrator must be presented to the judge for approval or rejection, and that any interested person may contest the validity of the claim, cannot be overlooked.

We conclude that the plaintiff's claim was properly presented to the defendant as co-executor, and that the action thereon was properly brought against him as such.

 The defendant also contends that the findings and conclusions of the trial court are not supported by the evidence. Particularly he points out that the plaintiff and the decedent sustained to each other the relation of parent and child and that in such a case the presumption is that the services of the child were not performed for compensation or reward. The defendant also relies upon his plea of the statute of limitations.

The decedent, Ray Elizabeth Winder, was born in Shropshire, England. Her sons, the plaintiff and the defendant, were born in this country. Before 1926 the decedent lived in San Diego. She and her husband were divorced. Shortly thereafter she sold some real estate received in the property settlement with her husband and removed to Los Angeles County. She commenced the construction of a home at 104 East Adams Street in Alhambra. Her son, Jerome E. Winder, had lived with her. There is evidence that during its construction the mother induced Jerome to continue to live with her upon her promise to leave that property to him. Upon its completion Jerome took up his residence in the new home with her, took care of her and the premises, furnished household expenses, automobile upkeep and the cost of pleasure trips taken by them. The defendant was married and maintained his own household. In May, 1933, the plaintiff married and lived away from his mother's home until September of that year, when he returned.

The plaintiff and his wife were precluded from testifying by reason of the provisions of section 1880 of the Code of Civil Procedure. It appeared from the testimony of the defendant that in September, 1933, the brothers discussed the question of the care of their mother, who was suffering from cancer, and the desirability of hiring an attendant or companion for her at their joint expense. Instead of following that course, Jerome returned to his mother's home with his wife, and with the latter's assistance resumed the care and maintenance of the mother until her death, paid to her $25 per month as rent, furnished her with board and personal care, and paid all other expenses except medical, special nursing, and hospitalization. There is evidence that in September, 1933, when the plaintiff resumed the care of his mother, the latter reaffirmed her promise to leave the home to the plaintiff in return for his services. The court found the existence of that understanding between the mother and the plaintiff and that the plaintiff performed the services in accordance therewith. The mother did not compensate the plaintiff, but left all of her estate to be divided equally among one child of the plaintiff and two children of the defendant.

██ It is the settled law of this state that when continuous personal services are performed under an express agreement for compensation upon termination thereof, which agreement is unenforceable because not in writing (Code Civ. Proc., sec. 1624; Civ. Code, sec. 1973), the reasonable value of the services may be recovered and that the statute of limitations does not commence to run until the termination of the services, which, in such cases, is usually upon the death of the promisor. (*Long* v. *Rumsey*, 12 Cal. (2d) 334 [84 Pac. (2d) 146]; *Zellner* v. *Wassman*, 184 Cal. 80 [193 Pac. 84]; *Morrison* v. *Land*, 169 Cal. 580 [147 Pac. 259]; *Estate of Rohrer*, 160 Cal. 574 [117 Pac. 672, Ann. Cas. 1913A, 479]; *De Mattos* v. *McGovern*, 25 Cal. App. (2d) 429 [77 Pac. (2d) 522]; *Burr* v. *Floyd*, 137 Cal. App. [692] 696 [31 Pac. (2d) 402]; *Warder* v. *Hutchison*, 69 Cal. App. 291 [231 Pac. 563]; *Mayborne* v. *Citizens T. & S. Bank*, 46 Cal. App. 178 [188 Pac. 1034].) [5] The relationship between the parties may repel the idea of contract (*Murdock* v. *Murdock*, 7 Cal. 511; *Briggs* v. *Estate of Briggs*, 46 Vt. 571, 577), and in order to support a claim for services made by a child or relation who remains with his parent or kin after majority the circum-

stances must show either an express contract or that compensation was in the contemplation of the parties. (*Long* v. *Rumsey, supra*; *Estate of Rohrer, supra*; *Friermuth* v. *Friermuth*, 46 Cal. 42; Civ. Code, sec. 210; *Briggs* v. *Estate of Briggs, supra*; *Ellis* v. *Cary*, 74 Wis. 176 [42 N. W. 252, 17 Am. St. Rep. 125, 4 L. R. A. 55]; *Wainwright Trust Co.* v. *Kinder*, 69 Ind. App. 88 [120 N. E. 419].) In the case last cited it was said: ''The intention to pay and the expectation of compensation may be inferred from conduct where equity and justice require compensation, as well as from direct communications between the parties. . . . [The] expectation of compensation may co-exist with higher motives prompted by affection or the sense of duty and . . . the existence of the latter does not necessarily exclude the idea of pecuniary compensation. . . . To warrant the finding of such contract, the elements of intention to pay on the one hand, and expectation of compensation on the other, must be found to exist; but such elements, like other ultimate facts, may be inferred from the relation and situation of the parties, the nature and character of the services rendered, and any other facts or circumstances which may reasonably be said to throw any light upon the question at issue.

''The right and justice of the claim for compensation, or the wrong and injustice, if any, attending such claim, may be considered, but only as tending to aid in ascertaining the intention and expectation of the parties in relation to the question of compensation for the services in controversy. 9 Cyc., pp. 242–243 . . .

''In this case it was a question for the trial court to determine from the evidence whether the facts and circumstances shown thereby were sufficient to rebut the presumption that the services of appellee were rendered gratuitously.''

██ The foregoing is in harmony with the statutes and decisions of this state, and we conclude that the evidence fully supports the findings and judgment of the trial court. The reasonableness of the amount adjudged by the court to be due to the plaintiff is not open to question.

██ The failure of the court to find specifically on the issue of the statute of limitations does not require a reversal. The facts otherwise found preclude a finding against the plaintiff on that issue. ██ The fact that in the original complaint the plaintiff also named himself as defendant in his official

capacity as executor is not fatal. As the action was properly brought against John R. Winder as executor, the addition of the name of the co-executor was no more than surplusage, especially in view of an amendment omitting his name as a co-defendant.

The judgment is affirmed.

Curtis, J., Traynor, J., Edmonds, J., Carter, J., and Gibson, C. J., concurred.