[Civ. No. 14220.   Second Dist., Div. Three.   June 5, 1944.]

GLADYS R. ARMSTRONG, Respondent, v. ALMA KLINE, as Administratrix, etc., Appellant.

Carson B. Hubbard and James V. Brewer for Appellant.

Paul Vallée and S. Bernard Wager for Respondent.

WOOD (Parker), J.—This is an action to recover the reasonable value of services rendered, and to recover possession of an automobile and two automobile-ownership certificates. In a jury trial, plaintiff obtained a judgment for $7,500 for services rendered and a judgment that she have and recover the automobile and the certificates. Defendant appealed from both judgments.

Although an appeal was taken from the judgment that plaintiff have and recover the automobile and the certificates, no contention is made in appellant's briefs or in her oral argument that said judgment should be reversed.

Appellant asserts on appeal that the trial court erred prejudicially in refusing to receive certain evidence offered by appellant, and that "the verdict and judgment are contrary

to the law." Since no contention is made that the evidence is not sufficient to support the judgment as to services rendered (or the other judgment), it will not be necessary to state the evidence in detail.

Andrew W. Flick was the owner of a lot, store building and liquor store at 8508 South Compton Avenue in Los Angeles, and he lived in the rear of the store. He died on March 31, 1941. Plaintiff duly served and filed, in the probate proceedings in the matter of his estate, her claim as a creditor of said deceased, which claim was in substance as follows: That said deceased "about July 3, 1936, orally agreed to give, devise and bequeath to Gladys R. Armstrong [plaintiff] . . . in his Last Will, his lot, building and liquor store business . . . located at 8508 South Compton Avenue, Los Angeles, California, as stated by deceased of the value of the sum of $9500.00 . . . amply provide for claimant [plaintiff] in said Last Will of deceased, and assist claimant in opening, conducting and operating her dress shop business to be located at 8510 S. Compton Avenue, Los Angeles . . . in consideration of claimant moving her residence to and opening, conducting and operating her said dress shop business at said location of dress shop business, of assisting deceased in operating his said premises and liquor business, acting as his housekeeper and occasionally going out with deceased to his friends' homes. That on about April 15, 1937, deceased opened his real estate office and business at 8506 S. Compton Avenue, Los Angeles . . . and at the request of deceased and as additional consideration for and as part of said agreement, claimant assisted deceased in the conducting and operating of said real estate business to about July 15, 1939. On about May 8, 1939, at the request of and with the consent of deceased, claimant opened and continued to operate her cleaning shop business . . . to March 31, 1941. In consideration of said agreement claimant on about July 3, 1936, moved her said residence to said premises and on about July 15, 1936, opened and continued to operate her said dress shop business at said location . . . assisted deceased in operating said premises and liquor business and acted as housekeeper for deceased in said premises and liquor business daily from about 6 o'clock a.m. to about 10 o'clock p.m., and occasionally went out with deceased to deceased's friends' homes, from said about July 3, 1936, to March 31, 1941, and continues to operate said dress shop business and cleaning shop

business. That the reasonable value of all of said hereinabove items is the sum of $9500.00.''

Said creditor's claim stated further: ''That deceased failed to give, devise and bequeath to claimant in his Last Will, said premises and liquor business and amply provide for claimant thereon and failed and refused to carry out and perform the provisions of said agreement on his part to be performed; that claimant has performed all the provisions of said agreement on her part to be performed.'' The claim also included statements that said administratrix (defendant) was withholding from, and refusing to deliver to, plaintiff two certificates of title to two certain described automobiles, which automobiles were purchased by claimant from her personal funds and were owned by claimant; that one of the automobiles was in the possession of claimant at the time of making the claim; and that the reasonable value of the certificates and automobiles was $150.

The first amended complaint, upon which the action was tried, included allegations which were in substance the same as the statements in said creditor's claim.

The answer of defendant admitted that Flick did not make a will and that he did not give, devise, or bequeath anything to plaintiff.

The evidence was sufficient to support findings that the statements in said creditor's claim as to the making of the agreement, the fulfillment of the terms thereof by plaintiff, and the failure of Flick to perform his part of the agreement, were true.

The real estate office, the liquor store, the dress shop, and the cleaning shop were located at 8506, 8508, 8510 and 8512 South Compton Avenue, respectively. The dress shop adjoined the south side of the liquor store, and the cleaning shop adjoined the south side of the dress shop. Doorways were cut through the dividing walls of those places. The real estate office was immediately north of the liquor store, but did not adjoin it. The four places were connected by a buzzer system so that when the front door of any of those places was opened a buzzer would sound in the other places. The living quarters at the rear of the liquor store consisted of a living room, bedroom, breakfast room, kitchen and furniture. At the rear of the living quarters Flick had a garage, a garden and places where he, at times, kept rabbits and chickens.

Upon objection having been made by defendant (under the provisions of Code Civ. Proc., § 1880, subd. 3) to the giving of testimony by plaintiff, plaintiff did not testify concerning her claim for the reasonable value of services rendered. Plaintiff called thirteen witnesses concerning the issue of services rendered and the agreement to make a will. Nine of those witnesses testified that they frequently saw plaintiff working in the liquor store and doing housework in the living quarters of Flick in the rear of the liquor store. Several of those witnesses testified that such work included cooking, scrubbing floors and walls in the store and kitchen, washing windows, and waiting on customers in the liquor store from early morning to midnight. Five witnesses testified that they heard Flick say in substance that he would leave the liquor store and liquor store property to plaintiff if anything should happen to him. Two witnesses testified that Flick said he had not paid any wages to plaintiff. Four witnesses testified that they saw plaintiff take care of Flick when he was sick. He was sick on seven or eight occasions, each of which occasions extended over a few weeks. One witness testified that she frequently saw plaintiff iron Flick's laundry.

The testimony of plaintiff concerning the automobile and the two certificates of ownership was in substance that plaintiff purchased the two automobiles referred to in the certificates with her own money; that the certificates were issued in her name as owner; that she endorsed them and placed them in decedent's safe deposit box for safekeeping; that defendant locked the garage at the rear of the liquor store where one of the automobiles was kept and refused to permit plaintiff to have possession of that automobile; and that the other automobile was in the garage at the rear of plaintiff's dress shop and plaintiff had possession of that automobile.

Defendant asked one of plaintiff's witnesses on cross-examination: "Did you know that in 1936, in July of 1936, Gladys [plaintiff] was receiving relief from one of the relief agencies?" Plaintiff's objection thereto upon the grounds that it called for a conclusion of the witness and was not proper cross-examination was sustained. Defendant thereupon asked the witness: "Did Gladys tell you at any time whether she was receiving relief from one of the relief agencies?" Plaintiff's objection thereto upon the ground that it was not impeachment and not proper cross-examination was sustained. Defendant's argument, in support of her contention that

said questions were proper, is that she was entitled to show that plaintiff "possessed little or nothing in the way of worldly goods" when she became associated with Flick, and then was entitled to show that she owned a dress shop and a cleaning shop at the time of Flick's death, in order that a comparison of plaintiff's status at the beginning and close of the association might be made when considering whether plaintiff accumulated sufficient property during her association with Flick to compensate her fully for her alleged services. ■ As to the first question, it was immaterial whether the witness had knowledge of the fact implied therein that plaintiff was receiving relief, and the question was not proper cross-examination. That ruling was not erroneous.

■ As to the second question, an answer thereto in the affirmative would have been evidence of an admission by plaintiff that she had received relief from a relief agency, and such an admission would have been material evidence for the purpose stated in defendant's argument above mentioned. There was no offer of proof, however, that the answer would be in the affirmative and there was no offer to prove that plaintiff did receive relief in July, 1936, or at all. It was not prejudicial error to sustain the objection to that question.

Defendant contends further that the court erred in refusing to receive in evidence thirteen checks, totaling $111.58, which were drawn by Andrew W. Flick, and were payable to G. R. Armstrong. ■ A witness called by defendant testified that six of said checks, totaling $38.50, were received by him, a manufacturer of laundry equipment, in payment of amounts due to him as monthly installments under a written contract whereby plaintiff agreed to purchase from him certain electric equipment which had been installed in her cleaning shop. There was no testimony that plaintiff endorsed any of those checks. Defendant offered the six checks in evidence. Plaintiff objected to said offer upon the ground that there was no showing that plaintiff endorsed the checks or had anything to do with them. The trial judge said: "Will you connect it up further later, Mr. Hubbard [counsel for defendant]?" Counsel for defendant replied: "Yes, I think I can connect it up." The trial judge then said: "All right. . . . You may offer them later. The objection is sustained at this time." The only effort "to connect it up" later is referred to hereinafter. Said six checks were not offered in evidence later.

A witness called by defendant testified that seven of said checks (other than the six checks just mentioned), totaling $73.08, were received by him, the credit manager of a laundry machine company, in payment of amounts due the company as monthly installments under a written contract whereby plaintiff agreed to purchase from the company a pressing machine and boiler. There was no testimony that plaintiff endorsed any of those checks. Defendant offered the seven checks in evidence. Plaintiff objected to said offer upon the ground that there was no foundation for proof of the signature of plaintiff on any of those checks. The trial judge said: "I think you better lay a further foundation. They are already marked." Then counsel for the defendant asked said witness the following questions and the witness gave the following answers: "Q. Do you know the signature of G. R. Armstrong? A. No, I do not. Q. You can't say whether or not that name G. R. Armstrong on the back of the checks was signed by her or by somebody else? A. I couldn't tell." Thereupon counsel for defendant said: "We will leave them for identification and I will try to identify them further." The trial judge then said: "All right. They are already marked for identification and you may try to identify them further."

The only effort "to connect it [endorsements] up further later" or "to identify them [endorsements] further" was the calling of another witness by defendant and addressing questions to her concerning her qualifications to testify as to plaintiff's signature. That effort is shown by the following excerpt from the transcript: "Q. By Mr. Hubbard: Have you seen Gladys Armstrong sign her name? A. Yes. Q. Have you seen that on many occasions? . . . A. No. I have seen her sign it. Q. How many times have you seen her sign her signature? A. There was two different occasions on which she signed three papers. Q. And from observing these signatures could you say you are able to identify her handwriting? Mr. Vallée: . . . I object to that on the ground it is calling for a conclusion and opinion of the witness. Whether she can say or not is a matter for your Honor to say, whether she can or cannot. The Court: The objection is sustained. Q. By Mr. Hubbard: I will now ask you whether or not you can say the signatures on the back of these checks are the signatures of Gladys Armstrong? Mr. Vallée: Exactly the

same question, and it is objected to. The Court: Yes. The objection is sustained." On appeal the defendant (appellant) does not assign said ruling as error. The ruling, however, was erroneous, the witness having said that she had seen plaintiff write. (Code Civ. Proc., § 1943.) Defendant made no offer of proof that the witness would testify that any of the signatures was the signature of plaintiff, and the ruling was not prejudicially erroneous.

The second group of checks, relating to the pressing machine and boiler, were offered in evidence later, and at that time counsel for defendant said: "While it is true I have not been able to prove the signature of Gladys Armstrong, the facts in the case show——" and "This group of checks it has been testified were given in payment of the boiler and the press that were located in this place, and charged to this shop, and I think that is sufficient identification to permit them to be introduced here in evidence. I don't think it is necessary to show how the endorsement was placed on there or by whom. The check on its face shows it is a check of Andrew W. Flick." It was not shown that plaintiff endorsed any of the checks; however, it was shown that the checks drawn by Flick were received by persons to whom plaintiff was indebted for equipment in her cleaning shop and that plaintiff was given credit upon her indebtedness for the amounts of the checks. The testimony was that the amounts credited to plaintiff's accounts were the amounts shown on the checks drawn by Flick, and that said amounts were so credited by reason of the receipt of said checks issued by Flick. Plaintiff obtained a benefit to the extent of the total amount of the checks, irrespective of whether or not she endorsed the checks. The account sheet showing the payments, by reason of the checks, as to the pressing machine and boiler were offered in evidence and no objection was made to that offer; however, no ruling was made as to the offer. The checks should have been received in evidence as part of the documentary evidence showing that plaintiff obtained a monetary benefit by reason of the issuance of said checks. Furthermore, the checks should have been received in evidence for the reason an exemplar of plaintiff's signature was in evidence at the time the court sustained the objection (her signature on her creditor's claim) which the jury could have used for purposes of comparison with the endorsements on the checks in considering whether plaintiff endorsed the

checks. (*Castor* v. *Bernstein* (1906), 2 Cal.App. 703, 706 [84 P. 244].) It is to be noted, however, that counsel for defendant did not state to the court that he offered the checks in order that such comparison might be made. The fact that said payments were made by Flick in behalf of plaintiff was material not only on the issue as to the amount due to plaintiff for services rendered, if any, but also on the issue as to whether there was an oral agreement to devise the liquor store to plaintiff, and also on the issue as to whether plaintiff used her own money or Flick's money in purchasing the automobiles. Among other things, such payments by Flick might have been gifts from him to plaintiff, or in payment or part payment for services rendered, or in compliance with a mutual-assistance-agreement between Flick and plaintiff (as defendant asserts in her brief) whereby they were to assist each other in the operation of their places of business. Defendant made no offer of proof that the checks were drawn by Flick in payment of services rendered, or that they were drawn in compliance with such a mutual-assistance-agreement; however, such offer was not necessary. ■ The failure to receive the checks in evidence was not prejudicial error for the reason there was uncontradicted testimony by witnesses called by defendant, and uncontradicted documentary evidence as shown by the account sheet offered in evidence by defendant (to which no objection was made by plaintiff), that payments as shown by said seven checks were credited to plaintiff's accounts by reason of the issuance of said checks by Flick. The matter of crediting the account of plaintiff by reason of the issuance of the checks by Flick was before the jury for its consideration.

■ Appellant asserts, however, that the court instructed the jury "that they could not regard any of the testimony given relative to the checks and they must treat such testimony as if they had never heard the same." The instruction given by the court, so referred to by appellant as an instruction embodying said assertion, was in part as follows: "You must not consider for any purpose any evidence offered and rejected, or which has been stricken out by the court; such evidence is to be treated as though you never had heard it." The evidence that was offered and rejected was the checks. The evidence that plaintiff's accounts for equipment in her shop were credited, by reason of the checks drawn by Flick,

was not rejected. The instruction given by the court, so referred to by defendant, does not bear the interpretation which defendant placed upon it that the jury "could not regard any of the testimony given relative to the checks."

▪ Defendant also asserts that "we find the counsel for the respondent causing the Court to admonish the jury to disregard the very evidence that respondent now claims was and is before the jury [referring to the evidence that the checks were credited to plaintiff's accounts]." Said assertion is based upon the following: "Mr. Hubbard: This group of checks it has been testified were given in payment of the boiler and the press . . . and I think that is sufficient identification to permit them to be introduced here in evidence. I don't think it is necessary to show how the endorsement was placed on there or by whom. The check on its face shows it is a check of Andrew W. Flick. Mr. Vallée: Just a minute. I charge counsel again with probably inadvertently, though he is, doing something he shouldn't do, telling what the evidence may be if it is introduced, to this jury. The Court: I will instruct the jury to disregard any statements made by counsel." (After further discussion, all of which does not appear in the transcript, the court said, "I will sustain the objection.") A statement of counsel made during a trial is not to be considered as evidence unless such statement is made as an admission or stipulation conceding the existence of a fact. The admonition of the court that the jury should disregard said statement of counsel for defendant was proper.

▪ Defendant also contends that the court erred in refusing to receive evidence of an admission against interest made by plaintiff. The defendant was called as a witness by her counsel and was asked by her counsel whether the plaintiff had a conversation with her (defendant) relative to the filing of a claim by plaintiff against the estate of Flick. Defendant replied in the affirmative, and after other questions and answers concerning the time and place of, and the persons present at, the conversation, the following occurred: "Q. And what was said, if anything, at that time [September, 1941] by Mrs. Armstrong [plaintiff] in your presence? Mr. Vallée: Just a moment. I object to that on the ground there is no evidence of any compromise—— The Court: I don't know what it is. Mr. Vallée: ——which is admissible in evidence. Mr. Hubbard: This is not any evidence of a compromise, as I understand. The Court: The objection is over-

ruled, subject to a motion to strike, if not proper. You may answer. Q. By Mr. Hubbard: What was the conversation? A. Well, she called me out of the liquor store over into her cleaning shop and she asked me what I thought about settling, and I told her that—— Mr. Vallée: Now,—— The Court: That is stricken out; the jury will disregard that." In *Boyes* v. *Evans* (1936), 14 Cal.App.2d 472 [58 P.2d 922], it was said at page 479: "It is a well-established rule of law that it is not permissible to show that a party to litigation has offered to compromise the case. The rule not only excludes the offer to compromise but also all negotiations with relation thereto." In *H. D. Taylor Co.* v. *J. H. Jonas & Sons* (1931), 118 Cal.App. 208 [4 P.2d 797], it was said at page 211: "Counsel's own question about 'trying to settle' clearly warranted the court's conclusion that he was inquiring into an offer to compromise and such evidence was inadmissible." The purported conversation was in September, 1941. The testimony of counsel for defendant (given after said testimony by defendant) showed that he had received a letter from plaintiff about May 7, 1941, wherein plaintiff claimed $912 for two years' services rendered to Flick as clerk and housekeeper. His testimony also showed that prior to receiving the letter he had told plaintiff she could not recover for services which were rendered more than two years preceding Flick's death unless she had a contract with Flick. It appears therefore that at the time of the purported conversation wherein the witness said, "she asked what I thought about settling," that a claim had been filed by plaintiff with the administratrix (the said witness). There was, therefore, at the time of the purported conversation, an issue between the plaintiff and the witness which could have been the subject of a compromise. If, as appellant asserts, the statement of the witness was not to be evidence of an attempted compromise, it was the duty of counsel for defendant to have informed the court concerning what he intended to prove, but he failed to so inform the court. It was not error to exclude the answer relative to "settling."

The last contention of defendant is that "a contract in favor of the plaintiff could not be implied or enforced because prohibited by law." Her argument in support of that contention is: that "the case was tried upon the theory of a long line of decisions holding that where services have been performed and accepted the law will imply a contract

to pay the reasonable value of such services at the conclusion thereof,'' and that ''in cases where the services have continued until the time of death, payment of such services was not due until the date of death''; and that ''All of the aforesaid decisions are in direct conflict with the labor laws of the State of California.'' She cites several sections of the Labor Code (enacted in 1937) which, insofar as material here, provide in substance as follows: section 200, that '' '*Wages*' includes all amounts for labor performed by employees,'' and that '' '*Labor*' includes labor, work, or service whether rendered . . . under contract . . . or other agreement if the labor . . . is performed personally by the person demanding payment''; (Italics ours.) section 204, that certain wages are ''payable twice during each calendar month''; section 205, that ''in household domestic service, when the employees . . . are boarded and lodged by the employer, the wages . . . shall become due and payable once in each calendar month''; section 210, that ''every person who fails to pay the wages . . . as provided in sections 204 and 205, shall forfeit to the State the sum of ten dollars for each failure''; section 215, that ''Any person . . . who violates any provision of sections 204, 205 . . . is guilty of a misdemeanor''; and section 219, that ''no provision of this article can in anyway be contravened or set aside by a private agreement, whether written, oral, or implied.'' Appellant asserts that said sections of the Labor Code ''are prohibitory and being for the public welfare and therefore any contract either express or implied in contravention of them is void and unenforceable.'' She states further that by reason of said provisions of the Labor Code that ''an implied contract to pay for services rendered cannot be the basis for a suit to recover the reasonable value thereof.''

These points were not presented during the trial, but were first presented upon the motion for a new trial. Apparently it is defendant's contention that if plaintiff was entitled to wages for her alleged services and if she failed to collect the wages each month, as provided in section 204 or section 205 of the Labor Code, she forfeited the wages. It is not necessary to consider further the contention of defendant based upon said sections of the Labor Code for the reason this action is not predicated upon an agreement to pay wages. The implied finding of the jury was that there was an agreement between Flick and plaintiff that if plaintiff would perform certain services for Flick that he would devise and

bequeath certain property to her. Under such an agreement, if Flick failed to fulfill his part of the agreement the law implied an agreement, upon his death, to pay plaintiff the reasonable value of the services she had rendered. This is not an action upon an express contract to pay wages or upon an express contract to pay for services rendered. The provisions of section 1624, subdivision 6, of the Civil Code (the statute of frauds) are not applicable herein. This is an action for the reasonable value of services rendered. If services have been performed under an agreement that compensation for the services would be provided for in a will, the reasonable value of such services may be recovered if no provision was made in the will for compensation for the services. (*Winder* v. *Winder* (1941), 18 Cal.2d 123, 127 [114 P.2d 347, 144 A.L.R. 935]; *Reeves* v. *Vallow* (1940), 16 Cal.2d 95, 97 [104 P.2d 1017]; *Long* v. *Rumsey* (1938), 12 Cal.2d 334, 342 [84 P.2d 146].) Under such an agreement, as shown by the implied findings of the jury, that plaintiff was to be compensated by will for services rendered, a cause of action for the reasonable value of services did not arise until the death of Flick, and the statute of limitations did not bar any part of the period of continuous services. (*Lloyd* v. *Kleefisch* (1941), 48 Cal.App.2d 408, 412 [120 P.2d 97].)

Plaintiff asserts that since defendant appealed from the judgment that plaintiff have and recover the automobile and the two certificates and has not contended on appeal that said judgment should be reversed, a penalty for taking a frivolous appeal as to said judgment should be assessed. Although defendant did not contend that said judgment should be reversed, the points presented by defendant as to the judgment for the reasonable value of services rendered applied also to the judgment concerning the automobile and the certificates. A decision on appeal that there was prejudicial error in the rulings of the court as to the admissibility of evidence concerning the judgment for the reasonable value of services would have applied also to the other judgment. A penalty should not be assessed by reason of said appeal.

The judgments are affirmed.

Desmond, P. J., and Bishop, J., pro tem., concurred.

A petition for a rehearing was denied June 30, 1944, and appellant's petition for a hearing by the Supreme Court was denied August 3, 1944.