[Civ. No. 17365.   Second Dist., Div. One.   Nov. 21, 1949.]

ALMA FANCHER, Respondent, v. RUTH E. BRUNGER, as Executrix, etc., Appellant.

Eugene Tincher for Appellant.

Mary Swift Beeks for Respondent.

DRAPEAU, J.—After her claim therefor had been rejected, plaintiff brought this action against defendant as executrix of the last will and testament of Emilie DeLonee, deceased, to recover the sum of $5,000, alleged to be the reasonable value of services rendered by plaintiff to the deceased at the latter's special instance and request. It is also alleged in the complaint that for the services described therein and other similar services decedent "informed Plaintiff on more than one occasion that she would receive proper reimbursement from her estate."

According to the complaint, the services were rendered continuously from August 28, 1938, to date of death on May 31, 1948. The rejected claim was attached to the complaint and made a part thereof by reference.

The answer admitted the presentation of the claim and its rejection; denied generally the rendition of the services and their alleged value, and set up the defense of the statute of limitations.

The cause went to trial upon these issues, in particular that the alleged services were never rendered. The court found

in favor of plaintiff for the sum prayed for. From the judgment which followed, defendant executrix appeals.

It appears from the record that in 1938, when decedent was in the seventies and fairly active, she and respondent were neighbors living in close proximity to each other; and if respondent did not see decedent by 9 o'clock every morning she went over to find out "if she was up and around." During the period from 1938 to the date of death, respondent looked after decedent: dressed her, straightened up her house for her, made sure the dishes were clean and that there was food in the house; read her letters to her, wrote business letters for her and attended to her business affairs; helped her with her building and loan deposit book; made sure she did not tear up checks when they came through the mail; took her to the bank to draw interest, so she would have enough to live on; purchased and prepared food and took it to decedent; did her laundry, made her dresses, and performed the duties of a practical nurse during the last two years of decedent's life. Early in 1946, when decedent was old and feeble, she fell and injured her leg; in the fall of that year, she fell and broke her right arm and respondent took her to the doctor, and from that time until decedent died took care of her as a nurse. Mrs. Woodruff, respondent's daughter, testified to the above facts, and also that her mother made a dress for decedent about six years before she died at which time decedent stated that it was just what she wanted, but that respondent "would have to wait until after she was dead to get her pay for doing that as well as all of the other things mama had done"; that in 1942, decedent stated that "when she died Mrs. Brunger would be the administrator of the Estate, and mother and her would get half and half because she had made provision for the Marshs', because she had given Dorothy a lot in North Long Beach and various sums of money at different times."

Mrs. Fahrney, who had known decedent and respondent from the time she moved into the neighorhood in 1940, testified that in the fall of 1946, Mrs. DeLonee told her that "Alma (respondent) will have to wait . . . until I am gone. I have provided for her $10,000 in my Will; that will pay her for all the services she has given me."

Mrs. Jones, another neighbor who lived next door to Mrs. DeLonee from 1940 to 1948, testified that Mrs. DeLonee told her she thought a lot of respondent and "that she was taking care of her when she was laid away." Also, that she often ran

into Mrs. DeLonee's house to see how she felt and if there was anything she could do for her; that Mrs. DeLonee "would say, 'No, Mrs. Fancher would take care of it.' "

The evidence offered by appellant was mainly testimony of the beneficiaries under decedent's will to the effect that she was a very spry old lady, who kept her own house and declined help when it was offered; that prior to 1946, she visited them frequently at their homes in Long Beach, and that they often called on her at her home, usually staying an hour or two; that they never saw respondent in decedent's house, but that it was she who notified them of decedent's illness in 1946. Also that they offered "to do things" for Mrs. DeLonee, but "she didn't want anyone to do anything for her."

So far as is shown by the record, the parties hereto and the witnesses at the trial were all friends of decedent, but none was related to her.

Appellant contends first that the complaint does not state facts sufficient to constitute a cause of action, to wit: it does not allege nonpayment of the obligation sued upon, and is therefore fatally defective.

It is established law that "In a complaint upon obligation to pay money an allegation that the money has not been paid is required, on the theory that a failure to pay constitutes the breach of the contract sued on." (20 Cal.Jur. 945 and cases there cited. See, also, *Lloyd* v. *Kleefisch,* 48 Cal.App.2d 408, 416 [120 P.2d 97].)

However, the courts have upheld various modes of alleging nonpayment other than by direct averment. As stated in 20 California Jurisprudence, page 948: "Where the allegation of nonpayment, though defective, is in the form of a conclusion, *or is of such a character that the fact of nonpayment is implied,* it is sufficient when measured by general demurrer; in such case the attack must be made by special demurrer specifically pointing out the defect (*Grant* v. *Sheerin,* 84 Cal. 197 [23 P. 1094]; *Poetker* v. *Lowry,* 25 Cal.App. 616 [144 P. 981]; *Burke* v. *Dittus,* 8 Cal.App. 175 [96 P. 330]), and in the absence of such a demurrer the defect is cured . . . by judgment for the plaintiff (*Penrose* v. *Winter,* 135 Cal. 289 [67 P. 772])."

Appellant demurred generally to the introduction of further testimony during the course of the trial, but the specific ground therefor was not stated.

As heretofore stated, this action is founded upon a claim presented to and rejected by the executrix of decedent's estate for services rendered upon an alleged promise made by dece-

dent in her lifetime that respondent should receive proper reimbursement therefor from her estate. It is inherent in the promise itself that payment was not intended during the lifetime of Mrs. DeLonee; therefore, the fact of nonpayment may be implied from the allegation of the promise to pay after death.

Appellant next urges that the evidence is not sufficient to establish an express contract between respondent and the decedent.

The holding in *Lloyd* v. *Kleefisch*, 48 Cal.App.2d 408, 411 [120 P.2d 97], is applicable to the instant cause, to wit "There can be no doubt that the evidence offered and the reasonable inferences therefrom support the implied finding of the jury that these services were rendered with the expectation and understanding that they would be paid for. In a case closely parallel to the instant one on its facts, the court in *Seib* v. *Mitchell*, 10 Cal.App.2d 91 [52 P.2d 281] at p. 94, stated: 'An express contract need not necessarily be proved but "it is sufficient if from the facts and circumstances it reasonably can be inferred that compensation was in the view and contemplation of the parties." (*Mayborne* v. *Citizens Trust & Sav. Bank* ([46 Cal.App. 178] (188 P. 1034) *supra*.) "When services are rendered by one person, from which another derives a benefit, although there is no express contract or agreement to pay for the services, there is a 'presumption of law' which arises from the proof of services rendered, that the person enjoying the benefit of the same is bound to pay what they are reasonably worth." (*Moulin* v. *Columbet*, 22 Cal. 508, 509.)' "

It is also argued that recovery for services rendered more than two years prior to date of death is barred by the statute of limitations, section 339, Code of Civil Procedure.

It should be noted that the trial herein was had upon the theory that respondent had stated a cause of action for the reasonable value of continuing services performed by her at the special instance and request of decedent, which were to be paid for at the termination of the services, i.e., at the death of decedent, for which payment was not furnished nor provided.

"That recovery may be had for the reasonable value of such continuing services, as distinguished from the contract price therefor, and that when payment is to be made at the death of the promisor the statute of limitations does not begin to run

until the termination of the services by his death, is well settled in this state. (*Long* v. *Rumsey*, 12 Cal.2d 334, at 342 [84 P.2d 146], with cases cited; *Hagan* v. *McNary*, 170 Cal. 141 [148 P. 937, L.R.A. 1915E, 562].)'' (*Reeves* v. *Vallow*, 16 Cal.2d 95, 97 [104 P.2d 1017].)

Appellant next contends that the evidence does not support the allegations of the complaint as amplified by the bill of particulars. Apropos of this contention, the following appears in *Reeves* v. *Vallow, supra* (16 Cal.2d 95, 98): ''If the evidence is sufficient to support the cause of action for the reasonable value of the continuing services, it is now too late for the defendant to object to any formal deficiencies in the claim or in the statement of the cause of action. Both were sufficient to apprise the administrator of the general nature of the claim and the cause of action upon which the plaintiff would be entitled to rely under the foregoing authorities. (*Syler* v. *Katzer*, 12 Cal.2d 348 [84 P.2d 137, 119 A.L.R. 422]; *Zellner* v. *Wassman*, 184 Cal. 80, 88 [193 P. 84].)''

The evidence adduced at the instant trial, as hereinabove recited, was amply sufficient to support a cause of action for the reasonable value of continuing services.

With respect to appellant's argument that the findings of fact are too general and are not responsive to the issues raised, it must be admitted that they are not ''model'' findings. However, they do determine the truth or falsity of every material allegation and thereby dispose of the issues presented for determination.

There is no merit in the last two propositions urged by appellant. Suffice to say, quoting from *Winder* v. *Winder*, 18 Cal.2d 123, 127 [114 P.2d 347, 144 A.L.R. 935]: ''It is the settled law of this state that when continuous personal services are performed under an express agreement for compensation upon termination thereof, which agreement is unenforceable because not in writing (Code Civ. Proc., sec 1973; Civ. Code sec. 1624), the reasonable value of the services may be recovered and that the statute of limitations does not commence to run until the termination of the services, which, in such cases, is usually upon the death of the promisor. (Citation of authorities.) The relationship between the parties may repel the idea of contract (*Murdock* v. *Murdock*, 7 Cal. 511; *Briggs* v. *Estate of Briggs*, 46 Vt. 571, 577), and in order to support a claim for services made by a child or relation who remains with his parent or kin after majority the circumstances must show either an express contract or that compensation was in the contemplation

of the parties. (Citation of authorities.) In the case last cited (*Wainwright Trust Co.* v. *Kinder*, 69 Ind.App. 88 [120 N.E. 419]) it was said: The intention to pay and the expectation of compensation may be inferred from conduct where equity and justice require compensation, as well as from direct communications between parties . . . (The) expectation of compensation may co-exist with higher motives prompted by affection or the sense of duty and . . . the existence of the latter does not necessarily exclude the idea of pecuniary compensation . . . To warrent the finding of such contract, the elements of intention to pay on the one hand, and expectation of compensation on the other, must be found to exist; but such elements, like other ultimate facts, may be inferred from the relation and situation of the parties, the nature and character of the services rendered, and any other facts or circumstances which may reasonably be said to throw any light upon the question at issue.''

There was no evidence presented which would remotely support an inference that the services rendered by respondent were intended to be gratuitous.

The judgment is affirmed.

White, P. J., and Doran, J., concurred.